## LESSEE OF LOFLAND v. BLOXSUM.

Court of Common Pleas. Sussex. November, 1793.

*Bayard's Notebook, 17.*\*

*Miller* and *Peery* for the plaintiff. *Wilson, Read* and *Bayard* for defendant.

Counsel for the plaintiff produced the copy of a proprietary warrant dated 2d April, 1760, granted to William Lofland, for 100 acres of land adjoining his dwelling plantation and the land of John Hudson and Benjamin Riley, directed to Rhoades Shank-

---

\* This case is also reported in *Miller's Notebook, 24.*

land, Deputy Surveyor of Sussex County. This they called a located warrant in respect that it identified the tract of land for which it was granted. A regular title was deduced under the warrant to the lessor of the plaintiff. It was then proved that there was 100 acres of land in possession of the defendant adjoining the said dwelling plantation of William Lofland and the lands of said Hudson and Riley. Upon this proof the plaintiff rested his title.

The counsel for defendant showed that one Thomas Wharton thirty years ago and upwards was in possession of the land and conveyed from him to the defendant a regular title acquired by purchase for valuable and full consideration. They then offered in evidence the original warrant granted to William Lofland, upon which there was an indorsement in nature of a return certifying that the warrant was executed by location upon fourteen acres of land. These fourteen acres lay near to the lands of William Lofland but did not answer to the description contained in the warrant. At the same time was offered in evidence the original draft and return of survey made under the warrant by Rhoades Shankland, dated November 15, 1760.

*Miller* and *Peery* for plaintiff objected to these papers being given in evidence, which they said were bad on several grounds:

1. By the Act of Assembly, 1 Body Laws 251, it is directed "that the Deputy-Surveyors shall in fair books record the warrants and shall duly prove the draughts or plots and then record them"; therefore as there is a record of the warrant and draft, it should be produced as the best evidence.

2. That returns were made to [the] Surveyor General's office in Philadelphia, and a certified copy of the return should be produced.

3. The survey is inchoate till recorded and therefore on that ground bad evidence.

It was urged that great inconvenience might follow if such evidence were admitted; because of every survey many drafts are made in order that errors may be corrected and the draft rendered fair and accurate upon the return; it may therefore happen that old imperfect drafts, found among the papers of deceased surveyors, may be produced to show the location of warrants to which a different return has actually been made. Beside the draft is not an original paper. It is only a copy of the field notes of the surveyor.

On the other side it was said by *Bayard* in answer to these objections that the Act of Assembly was intended to increase and

preserve and not to diminish the evidence of title to land by warrant and survey. The warrant contained the authority of the surveyor and therefore regularly went into his hands; the survey is returned to the office in Philadelphia, and he therefore who takes up the land is left without proof of his right. To remedy this inconvenience was the Act of Assembly made, which provides that a record of the warrant and survey shall be made and preserved in the county to which the owners of lands may resort and procure evidence of their titles. The record is only a copy of the warrant and draft and therefore on the common principles of evidence not of equal authenticity, because it cannot be better and may be worse than the original. There is no necessity to impute to the Act further intentions than those mentioned. It is not done in cases similar.

The Act of Assembly, 1 Body Laws 187, directs that all deeds, etc., shall be recorded within a year. If a deed be or be not recorded it is the daily practice to admit it in evidence; this case meets both the objections, that the record should be produced, and that the warrant etc. are inchoate till recorded. The Act of Assembly is simply directory, and though it might be attended with penal consequences to the surveyor if not obeyed, yet its operation cannot be enlarged so far beyond any express provision as to render the warrant etc. void if the directions were not complied with. This would be punishing an honest purchaser for the delinquency of the surveyor. With respect to the survey being inchoate, nothing is certainly added by copying into the books of the surveyor; it is therefore in itself as complete before as after it is recorded; whether a draft produced be the ultimate and finished work or a mere experiment is a fact which may appear either from its own face or from collateral proof. As to the certified copy from the surveyor general's office which is required, that certainly cannot be necessary when we have a complete original in our hands.

BASSETT, C. J. The survey offered in evidence is an original paper notwithstanding it is taken from the field notes of the surveyor, for those notes are only in nature of memoranda. The warrant etc., not being recorded, its validity is not impaired. The Act of Assembly did not design to affect the original warrant and survey, but intended to promote the convenience and security of those who held under such titles by creating and perpetuating in the county authentic documents by which their rights might be ascertained and proved. It is admitted by the counsel for the plaintiff that application has been made to the office in Philadelphia for a copy of the return of survey; it is proved that

a return was made; the draft offered in evidence must therefore be good as it is the only evidence which can be had. It is further to be observed that this is evidence to prove location, and the proofs of boundaries and location are not regulated with the same strictness which prevails in other cases.

RODNEY, J., concurring, warrant and survey admitted in evidence.

The warrant and survey being admitted, Rhoades Shankland, formerly Deputy Surveyor of the county and son of the surveyor mentioned in the warrant, was produced as a witness on the part of the defendant. He said that the warrant was laid upon the 14 acres by his father with the assent and under the direction of William Lofland, who supposed that the land described in the warrant had been previously taken up under an older warrant and that the survey produced was the draft then made. Being examined as to the different kinds of warrants and the manner of locating them, he said that warrants were sometimes general for so much land in a hundred or in the county, sometimes special for a specific tract or parcel. If the warrant were general, it might be laid on any vacant land in the hundred or county. If it were special and the party could not find the land it described, he might lay it upon any vacant land in the county. That a general or special warrant, once located, though upon different lands from those described, was satisfied, though the quantity were less then the warrant called for. That the party paid for no more land than he took up and that nine shillings and no more was paid upon the grant of all warrants for any quantity of land not exceeding 100 acres. He said that his father and grandfather had been the Deputy Surveyors of the county and that he understood the practice as to warrants had always been as above stated.

There was no doubt in this cause that the warrant produced by the plaintiff was granted for the lands in the defendant's possession. The defendant relied upon the Act of Limitations but principally upon the actual location of the warrant upon a different parcel of land.

And the jury gave a verdict for defendant.